## Slater *v.* Kimbro *et al.*

1. One who by written contract lets premises to another for one year with a privilege of renewal for two years longer, admits the tenant into possession, and, at the expiration of the first year, sues out a summary statutory process maliciously and without probable cause to dispossess the tenant as a tenant at will holding over, is liable to an action for malicious prosecution of a civil proceeding, if any special damage to the tenant is occasioned thereby.

2. The premises being occupied and used by the tenant as a boarding-house, the loss of boarders occasioned by suing out the malicious process was special damage. So too were trouble and expense, including counsel fees, incurred by the tenant in giving bond and security to prevent summary expulsion from the premises by virtue of the malicious process. The declaration, though loose and needing amendment to give it full certainty, set forth a cause of action, and it was error to dismiss the same on motion or general demurrer.

November 9, 1892.

Before Judge Van Epps. City court of Atlanta. June 27, 1892.

The declaration of Mrs. Slater against Kimbro and others was dismissed on the ground that it did not contain any cause of action, and the plaintiff excepted. She alleged that Kimbro and his wife and Farley had damaged her $5,000. On October 6, 1890, defendants, by their agent Kimbro, rented to her a house and premises on Houston street, Atlanta, and entered into a contract

of lease, which is set out. The parties to the contract were Kimbro of the first part, and petitioner of the second, and the contract was one of rental by the party of the first part to the party of the second part for one year, with the privilege of two years longer, at an agreed monthly rate, the party of the second part also agreeing to board the party of the first part and his wife free, and to allow them to reserve certain rooms. Petitioner is a widow with no means of supporting herself and children, except by labor. She rented the house and premises for the purpose of keeping a boarding-house. She was reasonably successful, and paid her rent on or before it was due, but Kimbro and his wife became dissatisfied, and their language and demeanor towards her were offensive and insulting. Kimbro demanded that she give up the premises, pretending that he had no authority to lease the premises as an agent, using towards her insulting and abusive language. These and many other devices were fraudulently resorted to by him to frighten her and make her give up the house. He boasted that he knew the law, and that if she refused to give up the house he would make it a matter of regret to her as long as she should live. Mrs. Kimbro pretended that she was poisoned at petitioner's table, and pretended to get sick and to be afraid to take her meals at the table, and left the house. All this and much more was done by Kimbro and his wife to drive petitioner out of the house and force her to give up her lease. For long weeks petitioner bore with insults and annoyances from them, until finally, on October 2, 1891, they, together with Mrs. Farley, sued out a dispossessory warrant against her, making an affidavit which stated that Mrs. Slater occupied, up to August 1, 1891, the premises in question, as tenant at will or sufferance, and that on that day Kimbro, as agent for Mrs. Kimbro and Mrs. Farley, the owners of the property, gave her two months

notice necessary to terminate the tenancy, and the tenancy by reason of this notice having expired on October 1, 1891, Kimbro, agent as aforesaid, demanded possession of the property of Mrs. Slater who refused and omitted to deliver it. The affidavit was dated October 2, 1891. To this warrant petitioner interposed a counter-affidavit, relying upon her rights under the lease. She was required to give bond with security, or be turned out in three days. The warrant was based upon the malicious and fraudulent statement that petitioner was a tenant at will or sufferance. This statement is sworn to, in the face of the lease contract copied above. Then came what was to petitioner the greatest trial of her life. She was required to give bondsmen worth from $50,000 to $60,000 before the bond would be accepted by the sheriff. Kimbro by himself and agents went to the sheriff and objected to the security offered, and went to the sureties and insisted that they should not go upon the bond, and in every way possible attempted to thwart her in getting security. She succeeded in getting security on October 5, 1891, and defendants dismissed their possessory warrant on October 7, 1891. The warrant was sued out without probable cause and with malice. The issuing of the dispossessory warrant by Kimbro and his wife and Mrs. Farley was an abuse of a legal precept, for which punitive damages are claimed. It was not sued out in good faith as a legitimate legal proceeding, but it was resorted to to accomplish the nefarious purpose of depriving petitioner of the benefit of her lease, by placing her in a position where she could not give security, as is shown by the fact that as soon as the security was given the warrant was dismissed. She suffered great damage to her business in the loss of boarders. She suffered intensely from alarm and anxiety from which she was made sick and took her bed. She charges that defendants have acted in

bad faith and have been stubbornly litigious and caused her unnecessary trouble and expense, for which she claims $500 as attorneys' fees.

P. L. MYNATT & SON, for plaintiff.

W. B. FARLEY and ARNOLD & ARNOLD, for defendants.

BLECKLEY, Chief Justice.

1. The declaration is good in substance. It sets forth a substantial cause of action. The plaintiff being in possession of the premises under a written contract for one year " with privilege of two years longer at same agreed rate," she was not subject to rightful expulsion at the end of the first year as a tenant at will holding over. She was not a tenant at will, and was not holding over, unless she had relinquished or forfeited the " privilege of two years longer at same agreed rate," and this, so far as appears, she had not done. On the contrary, by remaining in possession after the year expired, she signified her intention to avail herself of the longer term provided for by the contract, and if an express renewal was contemplated (which, under the words of the writing, seems improbable), some demand to execute a renewal contract should have been made upon her. It seems to us that merely continuing to occupy would spread the original contract over the two additional years, just as it had previously covered the first year's occupancy, and that any further express contract on the subject would be needless. The monthly rent was not payable in advance, and there is no hint in the declaration that the plaintiff was in any fault or default whatsoever. The year did not expire until the first of October, and the warrant to dispossess her was sued out the next day. The want of probable cause is manifest, and malice on the part of the defendants is distinctly alleged. Though the warrant was not executed by eviction, if the suing of it out maliciously and

without probable cause, and the attempt to execute it by eviction, occasioned special damage to the plaintiff, she can recover. The warrant was aimed at her possession, and would have deprived her of it had she not given the bond and security required by section 4079 of the code. It failed to expel her from the premises, but it brought her possession into imminent peril, and forced her to give bond and security as the price of preserving it. Had she not paid this price, she would have been expelled, and the groundless and malicious proceeding would have been triumphant. It did triumph so far as forcing her into making a bond and procuring sureties to join with her in its execution was concerned. Had she failed to avail herself of this alternative, and if she had been turned out of possession in consequence, no one can doubt that she would have had a cause of action for the special damage occasioned thereby, the warrant having been voluntarily dismissed by those who procured it to be issued. Doubtless the course she took lessened her damages, and was therefore favorable to her persecutors. Shall she recover nothing because she rendered their unfounded and malicious proceeding as harmless to herself, and consequently to them, as possible, instead of leaving it to work all the mischief which they intended? The dismissal of the warrant after it had coerced the plaintiff to give bond and security terminated the proceeding; consequently the present action was not prematurely brought.

2. The declaration alleges that the premises were occupied and used by the plaintiff as a boarding-house, and that a loss of boarders was occasioned by suing out the malicious process. Such would be the natural and proximate effect of thus menacing the plaintiff's possession. It might be expected that boarders would drop out when they ascertained that their landlady was about to be expelled, and that persons who might have become boarders would be deterred from so doing.

This interference with her business as a boarding-house keeper might well cause her special damage, and the declaration alleges that it did so in fact. If she incurred trouble and expense, including counsel fees, in giving bond and security to prevent expulsion, this also would be special damage. The declaration is loose and vague as to some of these matters, and needs amendment in order to give it full certainty; but as we have already said, it sets forth a cause of action in substance. This being so, it was error to dismiss the action on motion or on general demurrer.    *Judgment reversed.*